### McGLOTHAN v. PENNSYLVANIA R. CO.
#### Civ. No. 5265.

District Court, E. D. Pennsylvania.

June 3, 1947.

178

B. N. Richter, of Philadelphia, Pa., for plaintiff.

Philip Price, of Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

This action arises under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and is brought by Robert McGlothan as administrator of the estate of Edna Hawkins, for the benefit of deceased's husband, Benjamin Hawkins. Edna Hawkins, an employee of defendant Pennsylvania Railroad Company, was fatally injured on December 27, 1944, when she was crushed by an engine moving over defendant's tracks, underneath the 44th Street Bridge in Philadelphia. At the trial, William I. Stauffer, Senior Field Examiner for the United States Veterans Administration in Philadelphia, testified as plaintiff's witness that Benjamin Hawkins had a 30% disability for malaria, and was in

poor health and unable to do heavy labor. Benjamin Hawkins had married the deceased in 1936, and entered the Army in 1942. The jury awarded plaintiff a verdict of $10,000 and judgment was entered for this amount. Defendant has moved both for a new trial and also to set aside the verdict and judgment in accordance with its motion for a directed verdict. Defendant's objections fall into three categories. It claims that plaintiff has failed to establish its right to maintain the action as administrator, that the court erred in its charge concerning the availability of a safe footway for the deceased, and that the court erred in excluding evidence designed to attack the marital status of Benjamin Hawkins. The last group of objections is the most complex and, therefore, deserves detailed examination.

In this group, defendant claims that the court should not have excluded exhibits offered by defendant to show deceased's separation from her husband, and that the court erred in instructing the jury to disregard Benjamin Hawkins' statements in his induction report stating that he was separated, and in refusing defendant's proferred charge that: "17. In calculating the amount which the deceased might reasonably have been expected to contribute to her surviving husband you may take into consideration the past history of the family relationship and the evidence of any contributions or failure to contribute to her husband prior to his death."

Benjamin Hawkins' testimony was to the general effect that he and his wife were happily married at the time he went into service. Defendant sought to introduce documentary evidence to show that, quite to the contrary, Hawkins and his wife were separated at that time, that she did not use the name of Hawkins, that she named a sister rather than Hawkins as beneficiary of her death benefits, and that there was nothing in the relationship of Hawkins to his wife which showed any reasonable expectation on his part that she would have contributed anything to his support.

The Federal Employers' Liability Act provides that a carrier shall be liable in damages for injury or death resulting in whole or in part from its negligence.

Recovery under the Act is for pecuniary loss and "there must * * * appear some reasonable expectation of pecuniary assistance or support" of which the beneficiary has been deprived. See Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417, Ann.Cas. 1914C, 176. Under Pennsylvania law a husband, of course, has the duty of supporting his wife and this duty is lost only when she is guilty of conduct which would be valid ground for a divorce. Commonwealth v. Henderson, 143 Pa.Super. 347, 17 A.2d 692. But by Pennsylvania statute, 62 P.S. § 1973, either spouse, if he is financially able, has the duty of supporting the other, if indigent, and should the local authority assume the burden of that support, the defaulting spouse will be liable for the financial assistance. Killmaier v. Hermann, 99 Pa.Super. 135; Dept. of Public Assistance v. Heinbaugh, 45 D. & C. 38. It would seem logical that this duty of a financially capable wife or husband can also be terminated only by conduct justifying a divorce. Cf. Dept. of Public Assistance v. Palmer, 45 D. & C. 590. Defendant's counsel has no evidence to offer indicating that Benjamin Hawkins' separation from his wife after his induction was other than involuntary, and the latter alone clearly would not relieve her of the duty of supporting him, if he could not support himself. See Hutcheson v. Hutcheson, 54 D. & C. 630, 113 Legal Intelligencer 443, (Fayette Co., Pa., 1945). Defendant's counsel admits that he cannot prove separation prior to induction sufficient to destroy that duty, but apparently claims, however, that the likelihood of continuance of the legal obligation, or of conformance to it while it continued, is nonetheless pertinent, and evidence relevant to these issues should be admitted.

■■ As to the latter point, it should be made clear that there is no question here of the admissibility of evidence of failure to live up to a duty of support in the past or of the weight to be accorded such evidence. Cf. annotations in 18 A.L.R. 1409 and 90 A.L.R. 920. It may be noted in passing, however, that if a duty to support exists, it does so because of the considered policy of courts or legislature. To deny the pecuniary benefit of enforcement of

that duty in the future because it has not been enforced in the past overrides this policy. Its justification is in an assumption that the beneficiary of a right to support would never take effective legal steps to enforce it, and that, therefore, a carrier should not bear an illusory loss in a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. But this assumption is highly speculative, at best, and its effect is to allow a negligent carrier to reduce its liability to a deceased's family by taking advantage of the deceased's past anti-social conduct of nonsupport.

■ However, regardless of the propriety of admitting such evidence, there is no issue of past nonsupport here. Benjamin Hawkins' need for assistance from his wife did not arise until after her death, when he was discharged with a permanent disability. Since her duty under the Pennsylvania statute was dependent on his need, failure to help him before her death was irrelevant. It could not, as in the sort of case mentioned above, indicate a probable disregard of duty in the future because of a disregard of duty in the past. Therefore, that part of the proffered charge which called for the jury to consider any evidence of failure to contribute was properly denied.

As to the rest of defendant's contentions on this point; i. e., that the statements in the induction report and the documents of deceased were proper evidence, its argument must be that this evidence is relevant as indicating that (1) when called upon to live up to her duty of support in the future, deceased would fail to do so, (2) the duty, itself, would soon have been terminated; e. g., by Benjamin Hawkins' desertion.

■ As to the first possibility, the court cannot agree to the propriety of admitting this kind of evidence. As a matter of policy, wherever possible, the beneficiary of a right to support should not be harmed by presuming anti-social conduct on the part of the supporting spouse. The force of precedent may compel a court to admit evidence of past failure to contribute as leading to proper inferences about future payments. But in this case the rejected documents of deceased, at most, indicate a lack

of interest on her part in her husband. Whether that feeling would continue if she were faced with her husband's need is another matter and one that is entirely too speculative to have any proper bearing on the issue of probable nonsupport. Evidence of state of mind and mutual feelings might be admissible on the issue of "reasonable expectation of pecuniary benefit" where no duty of support existed and one spouse died; e. g., where there is a suit for the benefit of a husband, as here, but in a jurisdiction without a statute like Pennsylvania's. See Loetsch v. N. Y. City Omnibus Corp., 291 N.Y. 308, 52 N.E.2d 448. But here it is the essentially antisocial conduct of nonsupport that is logically at issue first, not the general probability of pecuniary benefits where there is no duty of support, and to be admissible for proof of this, the evidence must be of a nature stronger than that submitted in this case. Cf. Philadelphia & Reading R. Co. v. Briscoe, 3 Cir., 279 F. 680, where even evidence of infidelity was held properly excluded in a suit under the Federal Employers' Liability Act.

■ As to the possibility of the duty itself terminating in the future, the objection that the offered evidence is too speculative applies with even greater force. It is admitted that neither the documents of deceased nor the induction report of her husband were sufficient to establish the latter's desertion or separation; i. e., conduct destroying deceased's duty to support her husband when he became disabled. Evidence falling short of conduct destroying the duty under Pennsylvania law should not be admitted as indicating its probable termination in the future and as affecting a beneficiary's "reasonable expectation" of support.[1] Otherwise, each family tiff could properly be said to foreshadow desertion; each wandering glance might indicate future misconduct, and the court or jury would face an intolerable task of predicting the future events in a marriage. Cf. Dunbar v. Charleston & Western Carolina R. Co., C.C.Ga. 186 F. 175. Therefore, defendant's proferred evidence and charge were correctly excluded and its objection to the court's instruction to disregard Benjamin Hawkins' statements in his induction report was not well taken.

■ Defendant further contends that the charge directing the jury to disregard Benjamin Hawkins' statements in his induction report and the rejection of Edna Hawkins' documents were incorrect because this evidence tended to impeach Benjamin Hawkins' credibility and should have been admitted under this theory. But attacking a witness' credibility cannot be done by showing inconsistencies on collateral matters. Cf. Despiau v. U. S. Casualty Co., 1 Cir., 89 F.2d 43, 46; Commonwealth v. Petrillo, 341 Pa. 209, 224, 19 A.2d 288, 295. The latter case quotes Wigmore to the effect that: "The only true test (of 'collateralness') is that laid down in Attorney General v. Hitchcock, * * * 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' * * *."

Applying this test to the instant case, the "facts", regarding which defendant seeks to expose Benjamin Hawkins' inconsistencies by the documents it offers, are: Benjamin Hawkins and his wife were separated when he went into the Army, and Benjamin Hawkins and his wife were not happily married. Evidence as to both facts has already been held inadmissible in the early part of this opinion. Neither the fact of separation, without knowledge of its length or who the guilty party is, nor the fact of an unhappy marriage, is sufficient to destroy the duty of support under local law. Since both facts could not be shown in evidence by defendant for purposes other than con-

---

[1] Pennsylvania's law on nonsupport seems adequate, and the court need not now decide whether a Federal court can, or should, attempt to adopt a uniform standard on the issues of what misconduct should hinder a spouse's recovery under the Federal Employers' Liability Act, and what the legal effect of the misconduct should be. Cf. Poff v. Pennsylvania R. Co., 327 U.S. 399, 66 S.Ct. 603, 90 L.Ed. 749, 162 A.L.R. 700; Seaboard Air Line R. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762; Chicago, Milwaukee, & St. Paul R. Co. v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041; see New Orleans & Northeastern R. Co. v. Harris, 247 U. S. 367, 372, 38 S.Ct. 535, 62 L.Ed. 1167.

tradiction, evidence of inconsistencies regarding them is inadmissible, as well.

■ In addition, though not decisive of the question, it should be noted that the induction report and the information contained in it are confidential. 38 U.S.C. § 456, 38 U.S.C.A. § 456. Defendant did not subpoena the Veterans Administration file it now seeks to make use of, nor did it ask the court to do so. Furthermore, while plaintiff called for the medical records from the file, for the benefit of veteran Benjamin Hawkins, as it was entitled to do, it vigorously objected to use of the other papers in the confidential file for the purposes to which defendant put them.

Besides the objections detailed above, defendant contends that the court erred in its charge and that plaintiff failed to establish any right to maintain this action.

■ As to the first point, defendant claims that error was twofold: that the court in its charge incorrectly stated the facts on the availability of a safe footway or clearance for deceased, and that it should not have refused defendant's proferred charge which would have instructed the jury to take into consideration, inter alia, "that the defendant furnished (the deceased) a reasonably safe passageway from one point to the other." Whatever error there may have been in this course, the court feels that it was not prejudicial and that, in any event, a new trial is not merited. The actual charge on the question of negligence was adequate, and there was ample evidence in the record justifying a jury finding that the railroad failed to supply a safe place to work, and that its negligence, in whole or in part, caused the death of Edna Hawkins. Under these circumstances, defendant's motion for a new trial on this point is denied. Cf. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

■ Defendant's last contention, however, is correct. Under the terms of the Federal Employers' Liability Act, where an employee has been killed, the cause of action vests in his personal representative, even though the representative then sues for the benefit of surviving relatives. Defendant argues that the plaintiff has nowhere proved his appointment as administrator, and that, therefore, he has no right to maintain the action. On this basis, defendant moved for a directed verdict and now moves for judgment n. o. v. or, alternatively, for a new trial. Plaintiff's supplemental memorandum in opposition to the motion points out that at the time his complaint was filed, only a technicality marred his rights as administrator; i. e., one of the necessary sureties had not yet signed the administrator's bond, and that this has since been done. Plaintiff argues that the now valid letters of administration should relate back and he seeks to amend his pleadings accordingly. This fails to meet defendant's contention that plaintiff has not proved his right to maintain the action as administrator, and, while it is conceivable that the court could take judicial notice of that appointment, Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, offers a fair and perhaps more orthodox solution of the problem. Limited new trials on a large variety of specific issues have been issued before under the rule. Cf. Commentary, Partial New Trials, 3 Fed.Rules Svc. 729, 730. Therefore, an order should be entered granting a new trial on the specific issue of Robert McGlothan's capacity to sue for the benefit of Benjamin Hawkins, but defendant's motions attacking the verdict and judgment are otherwise denied.